IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STEPHEN BUTLER and
MARY BUTLER, as Parents and
Next Friend of JOSHUA BUTLER,
a Minor

                Plaintiffs,

vs.                                                               CIV NO. 01-0466   MV

RIO RANCHO PUBLIC SCHOOL DISTRICT, ET AL.,

                Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Application for a Temporary Restraining Order or Preliminary Injunction, filed April 27, 2001 **[Doc. No. 2]**. The Court, having reviewed the moving papers, finds that the motion is well-taken and will be **GRANTED**, as explained below.

### BACKGROUND

Plaintiffs Stephen and Mary Butler filed this civil rights action under 42 U.S.C. § 1983, alleging that Defendants violated the constitutional rights of their son, Joshua. Plaintiffs filed an amended complaint on May 7, 2001. Plaintiffs allege in the amended complaint that:

        Joshua Butler was a senior at the Rio Rancho High School (RRHS) during the 2000-2001 school year.

        On February 9, 2001 Joshua drove his brother's car to school, knowing that his driving privileges had been suspended by RRHS.

He parked the car in the teachers' parking lot, knowing he did not have a parking permit to do so.

Because the car did not have the necessary parking permit, Officer Hyatt, one of the school's security guards, became suspicious and requested a registration check. Officer Apgar did a security check and learned that the car was registered to Joshua's brother, Stephen Jr.  Officer Apgar went to the parking lot.

Officer Hyatt, from outside the car, saw the butt end of a knife sticking up from between the passenger seat and the center console.  He notified Gary Tripp, the principal of RRHS, of the problem.  Mr. Tripp went to the parking lot.

School officials had Joshua come out to the parking lot and ordered him to unlock the car, ignoring repeated requests that his parents be present.

Joshua unlocked the car and Officer Hyatt removed the knife.  Officer Hyatt sought consent to search the car.  Joshua stated that the car was not his, that he did not know what was in the car, and that he wanted his parents to be present.

Officer Hyatt searched the car and found a gun and what he believed to be a pipe used for smoking marijuana.

Neither Joshua nor his parents knew that Stephen Jr. owned a gun or that there was a gun in the car.  Joshua did not see the knife while he was in the car.

Officer Apgar did a "pat down" search of Joshua and found no contraband. Another security guard, named in the complaint as "George Doe," searched Joshua's backpack, at Officer Apgar's direction and over Joshua's objection.  No contraband was found.

Plaintiffs allege that these actions violated Joshua's right to be free from unreasonable searches and seizures, in violation of the Fourth Amendment.

Joshua was handcuffed and placed in the back seat of a police car. He was then taken to the Rio Rancho Department of Public Safety and placed in a holding cell. Joshua was then taken to two separate juvenile facilities, where he was strip searched twice.

Joshua was informed in the car, by Officer Apgar, that he would be suspended.

Sometime after the arrest, Mr. Tripp telephoned Stephen Butler and informed him that Joshua had been arrested. He also informed him that Joshua was suspended.

The Butlers attempted to post bail, but were denied. Joshua was held in detention for five days.

Prior to this incident, Joshua had never been charged by police of school authorities with any violation related to weapons or drugs.

Plaintiffs received a Notice of Hearing, stating that Joshua was charged with violating Rio Rancho High School Policy #347-1, which forbids the possession, custody, and use of weapons by unauthorized persons in or around school property. Joshua was also accused of violating Rio Rancho High School Policy #336-3A.1.a(10)(a), which prohibits the illegal sale, possession, transportation or use of alcoholic beverages or controlled substances. *See* Pl. Ex. A

A student disciplinary hearing was held on February 27, 2001. The hearing officer did not make a finding that Joshua knowingly brought the handgun, knife, and drug paraphernalia onto school property. The hearing officer issued a decision on February 28, 2001, recommending that Joshua be suspended for one year, effective February 27, 2001.

The Butlers appealed the hearing officer's recommendation and an appeal was heard before the Rio Rancho Board of Education (the Board).  On April 2, 2001, the Board issued a decision upholding the hearing officer's recommendation.

Plaintiffs allege that Joshua's right, under the Fourteenth Amendment, to Substantive Due Process was violated because there was no finding by the hearing officer that he *knowingly* brought any contraband to school.

Plaintiffs allege that Joshua's right, under the Fourteenth Amendment, to Procedural Due Process was violated because he was entitled to immediate reinstatement at the expiration of a temporary, ten-day suspension; because RRHS failed to designate a "disciplinarian," or if there was a disciplinarian, it was Mr. Tripp, who was a witness to the incident in question; because the hearing officer considered documents that were not made part of the record and were not provided to Plaintiffs or counsel prior to or during the hearing; because the hearing officer found Joshua guilty by only substantial evidence, rather than by a preponderance of the evidence; because the Board considered evidence that was not part of the record; and because the Board made independent factual findings.

The Butlers made efforts to find an alternative education solution for Joshua so that he could complete his graduation requirements in time to graduate with his class, but RRHS and Rio Rancho school officials impeded their ability to do so by failing to return any of their phone calls and by interfering in their attempts to have Joshua enrolled in the Nova Net Internet Program, an internet program run by Albuquerque Public Schools (APS), through APS's Continuation School.

Brian Fitzspatrick, the Director of the Caesar Chavez Community Center and

supervisor of the Nova Net Internet Program operated out of that center, gave the Butlers the impression that Joshua would be able to enroll in Nova Net. When he learned that they had appealed Joshua's suspension, he told them that Joshua would not be able to be enrolled in Nova Net because it was a "sensitive subject/situation." Compl., ¶ 152

Defendant Fitzpatrick, along with Defendant Eddie Soto, who has supervisory responsibility over the Continuation School, retaliated against the Butlers because of their complaints against the Rio Rancho Public School District (RRPS), the Board, and various school officials. Such retaliation constitutes a separate constitutional violation.

The defendants have also violated Joshua's rights under the New Mexico Statutes and the Rules and Regulations of the State of New Mexico Board of Education.

Plaintiffs filed a request for a temporary restraining order (TRO) or a preliminary injunction (PI) requesting either: (1) an order prohibiting the Defendants from enforcing their order to suspend Joshua for one year and directing RRPS to immediately reinstate Joshua and to permit him to participate in commencement exercises, the prom and other graduation-related social activities and to issue to Joshua a RRHS diploma, upon his successful completion of all remaining classes, if his work cannot be completed prior to the date of the commencement exercises; or (2) an order directing Defendant Fitzpatrick to immediately enroll Joshua in the Nova Net program, at the expense of Defendants RRPS and the Board and ordering RRPS and the Board to permit Joshua to participate in commencement exercises, the prom and other graduation related social activities and to issue to Joshua a RRHS diploma, upon his succsessful completion of the Nova Net program, in the event the program requirements cannot be completed by the date of the commencement exercises. All of the Defendants oppose Plaintiffs' request for a

TRO or a PI.

On April 30, 2001, the Court held a hearing in order to determine whether, and if so, why, Joshua was being prevented from completing his graduation requirements. Prior to the hearing, Mr. Tripp wrote to Mr. Soto, stating that RRHS would accept credits that Joshua completed at Continuation School. At the hearing, Mr. Soto stated that he had not seen the letter until immediately prior to the hearing and that he would not have been able to enroll Joshua prior to receiving the letter. When asked by Plaintiffs' counsel whether Nova Net and Continuation School are the same thing, Mr. Soto stated that they are. Mr. Soto stated that Joshua could be enrolled as early as Tuesday, May 1, 2001.

On May 1, 2001, the Court entered an order denying the TRO request to the extent that it sought reinstatement at RRHS and an order directing RRHS to permit Joshua to participate in commencement exercises. The Court also denied the TRO request as unnecessary to the extent that it sought an order directing RRHS to authorize Joshua's enrollment in Nova Net because it had been represented to the Court that Joshua would immediately be enrolled in Nova Net. The order stated that if Joshua were not immediately enrolled in Nova Net, the Court would reconsider Plaintiffs' request.

On May 2, 2001, the Court was informed that Joshua had not been enrolled in Nova Net, but rather had been enrolled in another educational program run by the Continuation School. Joshua is attending classes at the Bernalillo County Juvenile Detention Center, with children who are being detained there. He is required to wear black and white clothing while attending classes. Because Joshua was not enrolled in the Nova Net Program, the Court decided to reconsider Plaintiffs' request for relief. A hearing was held on this matter on May 9, 2001.

6

**STANDARD OF REVIEW**

A district court may grant a temporary restraining order or a preliminary injunction if the moving party shows: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm in the absence of the injunction; (3) proof that the threatened harm outweighs any damage the injunction may cause to the party opposing it; and (4) that the injunction, if issued, will not be adverse to the public interest." *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Social & Rehabilitation Servs.*, 31 F.3d 1536, 1542-43 (10th Cir. 1994) (*citing Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1487 (10th Cir. 1983)). "Because a [TRO or] preliminary injunction is an 'extraordinary remedy . . . the right to relief must be clear and unequivocal." *Kansas Health Care*, 31 F.3d at 1543 (citing *SCFC ILC, Inc.v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991)).

**DISCUSSION**

**A. Likelihood of Success on the Merits**

Plaintiffs have represented to the Court that the heart of their argument is the Substantive Due Process claim. Because the Court finds that Plaintiffs have demonstrated a likelihood of succses on this claim, the Court will not address the likelihood of success on their Procedural Due Process, Fourth Amendment, or State law claims.

"The Due Process Clause guarantees more than fair process, and the 'liberty' it protects includes more than the absence of physical restraint." *Washington v. Gluckberg*, 521 U.S. 702, 719-20 (1997) (citing *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992)). Governmental infringements on "fundamental" interests must be "narrowly tailored to serve a compelling state interest." *Id.* at 721 (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)). Governmental

7

infringements on other interests are subject to rational basis review, which means that they must be "rationally related to legitimate government interests." *Id.* at 728.

Defendants correctly observe that the Supreme Court held, in *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1973), that education is not "a fundamental right or liberty." *Id.* at 37. Therefore, in order to succeed on their substantive due process claim, Plaintiffs are required to demonstrate that Joshua's suspension was not rationally related to legitimate government interests. Plaintiffs concede that Defendants have a legitimate interest in maintaining school discipline. The question, then, is whether the Joshua's suspension is rationally related to that purpose.

The Sixth Circuit addressed this issue in a case that is almost factually identical to the situation at bar. In *Seal v. Morgan*, 229 F.3d 567 (6th Cir. 2000), a high school student was expelled after school authorities found a knife in the student's car. The hearing officer made no finding that the student knew that the knife was in the car (the knife belonged to the student's friend and the student maintained throughout that the friend must have left it in the car without his knowledge). The Court acknowledged the public interest in allowing schools to impose and enforce the rules that they believe are necessary to keep the school safe, but noted that any such rules still had to rationally relate to their stated purpose. *Id.* at 575 ("In the context of school discipline, a substantive due process claim will succeed only in the rare case when there is no rational relationship between the punishment and the offense.") (internal quotations omitted).

The Court went on to hold that the school policy being challenged was irrational. *Id.* ("That said, suspending or expelling a student for weapons possession, even if the student did not knowingly possess any weapon, would not be rationally related to any legitimate state interest.").

The reason for the irrationality, the Court said, is that "[n]o student can use a weapon to injure another person, to disrupt school operations, or, for that matter, any other purpose if the student is totally unaware of its presence." *Id.*

The Court finds that the Sixth Circuit's analysis in *Seal* is persuasive and well supported. The defendant school board in *Seal* argued that scienter was not required under its policy and that, therefore, it did not matter that the student was unaware of the presence of the knife. The Court found the school's position "difficult" to understand in light of the established law on scienter. *Id.* at 576 (quoting *Morissette v. United States*, 342 U.S. 246 (1952)).[1] Since *Morrisette*, the Supreme Court has confirmed that statutes prohibiting the possession of contraband generally require that the offender know of the fact of possession. *See, e.g., Staples v. United States*, 511 U.S. 600, 605 (1994) (declining to impose standard of strict liability on defendant accused of violating statute making it unlawful to "receive or possess a firearm" because of the "firmly embedded" requirement that crimes have "some *mens rea*."). Like in *Seal*, the school policy at issue here does not explicitly require that the offender know of the fact of possession.[2] The Court agrees with the Sixth Circuit that imposing a long-term suspension or expulsion on a student for unknowingly engaging in prohibited conduct is not rationally related to

---

[1] *See Morrissette*, 342 U.S. at 250 ("The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty ... to choose between good and evil.")

[2] However, the state statute pursuant to which the school policy was promulgated *does* require knowledge. *See* N.M. Stat. Ann. § 22-5-4.7 ("In addition to other student discipline policies, each school district shall adopt a policy providing for the expulsion from school, for a period of not less than one year, of any student who is determined to have *knowingly* brought a weapon to a school under the jurisdiction of the local board.") (emphasis added).

9

...

the legitimate government purpose of maintaining discipline. A student cannot refrain from doing something he does not know he is doing.

Of course, the Court is not making a finding that Joshua did not know the contraband was in the car. It is not the role of the Court to relitigate the question of whether Joshua knew that the knife and gun were in the car; the Court's role is to examine the procedures employed by the school to ensure that these procedures comported with substantive due process guarantees. The problem here is that *there has been no finding* that Joshua knew the gun and knife were in the car. If the hearing officer had found that Joshua was not credible, and that he knew the knife and gun were in the car, the Court would be presented with a different situation.

Defendants have taken the position that the Court should infer that the necessary finding has been made. Defendants' position is that because the hearing officer heard both Joshua and Mr. Tripp testify at the hearing and ruled against Joshua, the hearing officer must have found that Joshua was not credible and that Joshua knew the contraband was in the car. The Court declines to make such an inference. It is not proper for the Court to assume the hearing officer made a finding that is not made explicit on the record. *See generally Seal*, 229 F.3d at 578-80.

The record simply does not reflect that the hearing officer made an adverse credibility finding against Joshua. *See* Pl. Ex. D. In fact, Mr. Tripp testified at the hearing that he "was trying to give Josh the benefit of the doubt" and that he "wouldn't doubt [Joshua's] word" if Joshua told Mr. Tripp that he did not know the knife and gun were in the car. *See* Pl. Ex. B1, 18. The record also does not reflect that the hearing officer found that Joshua knew the contraband was in the car. *See* Pl. Ex. D. In fact, Mr. Tripp testified that the purpose of the policy prohibiting weapons in the school, "whether knowingly or unknowingly," Pl. Ex. B1, 31, is "to

10

insure a safe school environment at any school environment." *Id.* at 31-32. Moreover, it has been Defendants' position throughout the proceedings that no finding of knowledge is necessary. Without such a finding on the record, however, the Court concludes that there is a substantial likelihood that Joshua's Substantive Due Process rights have been violated.

### B. Irreparable Harm

"The primary function of a preliminary injunction is to preserve the status quo pending a final determination of the rights of the parties, in order to to preserve the power to render a meaningful decision on the merits." *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992) (internal quotations omitted). A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain. *Kikimura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001). "When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Id.* (citing 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (2d ed.1995)).

In their motion, Plaintiffs argue that they and Joshua will suffer imminent irreparable injury if he is not immediately reinstated at RRHS and permitted to participate in commencement ceremonies because this is the only time in Joshua's life that he will be able to participate in commencement with his graduating class. Plaintiffs argue that this is injury that cannot be compensated in dollars. Mot. for TRO or PI, 3 (citing *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)).

In addition, Joshua testified at the May 9, 2001 hearing that having to go to school at a detention facility and wear black and white makes him feel like a "criminal," like he "did

11

something wrong," and that he is embarrassed to tell his friends and even his siblings about where he is going to school. Joshua also testified that he has been going to school with some of the same students since kindergarten and that he has been looking forward to participating in the final days of high school with them. Finally, Joshua testified that he wants his parents to be able to watch him graduate at the commencement ceremony because it is important that they be proud of him.

The Court finds that the injury that Plaintiffs will suffer if injunctive relief is not granted is irreparable. Joshua has come very close to accomplishing the completion his thirteenth year of formal education. This is something which Joshua and his parents have most likely been eagerly anticipating. While it is no doubt true that Joshua's parents would be proud of him for obtaining an RRHS diploma after completing the Continuation School program, the Court agrees that this is not an adequate substitute for the pride that a parent feels in watching his or her child graduate in cap and gown. In addition, the Court finds that there are likely to be other, less tangible consequences of Joshua's attendance at Continuation School. Rio Rancho is a small community. Attending school at a detention facility, in addition to causing embarrassment and humiliation, is likely to be a fact always remembered in Joshua's community.

Defendants state, without citation to authority, that "hurt feelings or personal disappointment generally are not 'injuries' warranting injunctive relief." Defs. Mem., 12. Notwithstanding this assertion, the Court finds that complaints of immediate emotional and psychological injury are generally the type of complaints that are considered "irreparable." *Chalk v. U.S. Dist. Court Cent. Dist. of California*, 840 F.2d 701, 710 (9th Cir. 1988). It is precisely these kinds of injuries that are difficult to compensate in dollars, and it is noncompensable injuries

that warrant issuance of injunctive relief.

If the Court ultimately finds that Joshua's constitutional rights were violated and that the suspension was improper, he will have suffered for naught.  More importantly for present purposes, even if the Court ultimately grants relief, there will be no way for the Court to go back and remedy the harm that will already have been inflicted.  For that reason, if Joshua is not permitted to return to school now, it will impair the Court's ability to untimately render a meaningful decision on the merits.  Therefore, the Court finds that Plaintiffs are likely to suffer irreparable harm if the requested relief is not granted and that this prong of the standard is satisfied.

### C. Harm to Defendants' and Public Interest

Defendants argue that they will be harmed by the issuance of injunctive relief and that the public interest weighs in their favor because their ability to maintain student discipline is "dependent upon their administration of discipline in an even-handed manner, on the basis of their professional judgment as educators."  Am. Mem., at 13.  They also contend that ordering that Joshua be permitted to return to school would result in giving him a "special dispensation" "which has not been afforded to other students similarly situated to him previously."  *Id.*

There can be no doubt that the school and the public, including the Butlers, have an interest in permitting school administrators to impose and enforce disciplinary provisions that are designed to protect our nation's children from violence.  There are two reasons, however, why Defendants' argument must fail.  First, Joshua is not necessarily "similarly situated" to other students who have been punished for bringing weapons to school.  The Court is not aware of the factual circumstances underlying any cases other than the one before it; nonetheless, it is clear that

13

Joshua is not similarly situated to any student who was disciplined for having *knowingly* brought weapons to school.  Second, as explained above, if Joshua did not know that there were weapons in the car, then it cannot be said that suspending him is likely to have any effect on the ability of school administrators to enforce their disciplinary policies.  While the Court agrees that school rules must be enforced in order to have meaning, the Court finds that public policy does not favor permitting the RRPS to enforce a rule that is likely unconstitutional and to bar a student whose suspension most likely violated due process from completing his final year of high school and graduating with his class.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' request for a Preliminary Injunction **[Doc. 2]** is hereby **GRANTED**.  The Rio Rancho Public School District and Rio Rancho Board of Education are hereby prohibited from enforcing their order to suspend Joshua for one year, and are hereby ordered to immediately reinstate Joshua to RRHS and to permit him to participate in commencement exercises and other graduation related social activities, and to issue Joshua a RRHS diploma upon his successful completion of the .25 credits that he must complete in order to graduate.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE

Plaintiffs' Attorney
    Joan Waters

Defendant's Attorney
    Charlotte Heatherington