IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JUL 2 2 2002

CLERK

STEPHEN BUTLER, and
MARY BUTLER, as Parents and
Next Friend of JOSHUA BUTLER,
a Minor

        Plaintiffs,

vs.       CIV NO. 01- 0466 M/WWD

RIO RANCHO PUBLIC SCHOOL
BOARD OF EDUCATION, a local public governing
body of the State of New Mexico,
SUE CLEVELAND, an individual,
GARY TRIPP, an individual,
SALLY MARQUEZ, an individual,
GERARD HYATT, in his individual and official
capacity, GEORGE DOE, in his individual and
official capacity, CITY OF RIO RANCHO, a local public
governing body of the State of New Mexico, and
OFFICER RUSS APGAR, in his individual and
official capacity,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before me on a Motion for Summary Judgment by the Defendants the City of Rio Rancho and Officer Russ Apgar, a Rio Rancho City police officer. I find that the Motion is well taken and will be granted. Summary Judgment is granted in favor of Defendants the City of Rio Rancho and Officer Russ Apgar on all counts which allege claims

1



against these two Defendants, including the claim of punitive damages.

## BACKGROUND

Plaintiffs Stephen and Mary Butler filed this civil rights action under 42 U.S.C. §§ 1983 and 1985 on behalf of their then minor son Joshua Butler. They alleged that various Defendants had violated the constitutional rights of their son Joshua Butler and that various Defendants had also committed state law torts against their son. Count XIII states a claim against Officer Apgar for violation of Joshua's Fourth Amendment rights, Count XV states a claim against the City of Rio Rancho and Officer Apgar for conspiracy to violate Joshua's constitutional rights, Count XVI alleges state law claims against Officer Apgar and the City of Rio Rancho and Count XVIII states a claim for punitive damages against the City of Rio Rancho and Officer Apgar.

The case stems from Joshua Butler's year long suspension from Rio Rancho High School on the basis of a finding that two weapons, a gun and a knife, were found in a car which Joshua had driven to school. It is a violation of state law to knowingly carry guns or knives on school premises. Rio Rancho school regulations promulgated pursuant to state law also prohibit the carrying of deadly weapons on school campuses. The Hearing Officer did not find, however, that Joshua had knowingly brought these weapons to school which is where the crux of this case lies.

Joshua, a student at Rio Rancho High School, had temporarily lost his driving and parking privileges on campus. Nevertheless, Joshua borrowed his older brother Stephen Butler's car and drove it to Rio Rancho High School, parking it in the faculty parking lot. During the morning, the chief security guard at the school Gerard Hyatt observed the unfamiliar car and

called the City of Rio Rancho Police Department and requested a registration check. The police discovered that the car was registered to Stephen Butler II and Officer Apgar relayed this information to Hyatt.

In the meantime, Hyatt looked in the passenger side window of the car and saw the butt end of knife sticking up between the passenger seat and the center console. He told Officer Apgar of his observation. Hyatt also told Principal Gary Tripp and Assistant Principal Sally Marquez about the knife. Another school security guard found Joshua at school and told him he was needed in the parking lot.

Joshua walked to the faculty parking lot, followed by the security guard. By the time Joshua got to his brother's car, the principal, the assistant principal, the chief security guard Hyatt and Officer Apgar were all standing around the car. Hyatt asked Joshua whether the car was his. Joshua replied that the car belonged to his brother. Hyatt told Joshua "we need you to open the car." Joshua asked why but got no response. Joshua stated he wanted his parents present. Hyatt told Joshua again that he needed to open the car. Again Joshua asked that his parents be present. Hyatt told Joshua "we see a knife in there. We need you to open the car."

Joshua's parents were not contacted. Joshua unlocked the car and Hyatt removed the sheathed hunting knife from the car. Hyatt asked Joshua if he knew the knife was in the car. Joshua said no. Officer Apgar asked Joshua if he had a problem if they searched the car. Joshua stated that the car was not his, he didn't know what was in the car, and reiterated that he wanted to speak with his parents. His parents were still not contacted.

Hyatt began searching the car. Neither he nor Officer Apgar had a search warrant. Under the driver's seat, Hyatt found a gun, a holstered 9mm loaded Glock handgun. At that point

3

Officer Apgar placed Joshua under arrest and performed a pat down search. Officer Apgar did not have an arrest warrant for Joshua.

The knife and gun belonged to Joshua's brother who had left them in the car. Joshua was charged with violating New Mexico criminal statute §30-7-2.1, Unlawful Carrying of a Deadly Weapon on School Premises, as well as various school regulations. Joshua was given a year long suspension but the suspension was enjoined by Judge Martha Vázquez which allowed Joshua to finish high school and graduate with his class. The preliminary injunction, which was appealed to the Tenth Circuit, has been vacated since it is now moot.

Various Defendants and causes of action have been dismissed either by judicial order or by agreement of the parties. This Summary Judgment Motion is brought by Defendant the City of Rio Rancho and its police officer Defendant Apgar and concerns only those causes of action against the City and Apgar.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure which are intended to "'secure the just, speedy and inexpensive determination of every action'." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'" *Thrasher v. B & B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (quoting *Russillo v. Scarborough*, 935 F. 2d 1167, 1170 (10th Cir. 1991)

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F. 2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56 (e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories and admissions on file', designate 'specific facts showing that there is a genuine issue for trial'." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## **QUALIFIED IMMUNITY**

Officer Apgar has also raised the affirmative defense of qualified immunity. Qualified immunity is an affirmative defense designed to shield government officials who perform discretionary functions from individual liability under 42 U.S.C. §1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), *Baptiste v. J. C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir.1998). Once the defense of qualified immunity is raised the plaintiff must establish first, that his statutory or constitutional rights were violated and secondly, that the contours of that right were sufficiently clear "that a reasonable official would understand that what he is doing violated that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Therefore, the threshold question in this Motion for Summary Judgment is whether a constitutional or statutory right of the Plaintiff was violated by the actions of Officer Apgar. "If no constitutional right would have been violated were the allegations established, there is no

necessity for further inquiries concerning qualified immunity." *Saucier v. Katz,* 533 U.S. 194 (2001), *Gross v. Pirtle,* 245 F.3d 1151(10th Cir. 2001).

## DISCUSSION

### COUNT XIII

I find that Officer Apgar had probable cause to arrest Joshua Butler on the charge of Unlawful Carrying of a Deadly Weapon on School Premises, N.M. Stat. Ann. §30-7-2.1 (1994 Repl. Pamp.) It is undisputed that Defendant Gerard Hyatt, the chief security guard at Rio Rancho High School, first noticed the unfamiliar car in the faculty parking lot and called the Rio Rancho Police Department to get a registration check done on the vehicle. Officer Apgar relayed the information about the registration to Hyatt. It was Hyatt who looked in the passenger side window of the car and noticed the butt end of a knife sticking up and who called the other Rio Rancho High School personnel to the scene. It was Hyatt who first spoke with Joshua in the parking lot and who conducted the search of the car.

Hyatt, as a school official, was allowed to conduct a search of the car on school grounds based upon reasonable suspicion. *New Jersey v. T.L.O.,* 469 U.S. 325 (1985). I have already determined in an Opinion filed May 17, 2002, [Doc. No. 88], that Hyatt had the reasonable suspicion necessary to begin the search of the car based upon his observation of the knife in plain view. The search of the car was not only justified at its inception but was also reasonably related in scope to the circumstances justifying the search initially. *New Jersey v. T.L.O., supra* at 341-342.

Plaintiffs have argued that there may be a material issue of fact in dispute as to who

"instigated" the search of the car and whether the search was "conducted in conjunction with or at the behest of law enforcement agencies". The attorney for the Plaintiffs has submitted an Affidavit pursuant to Fed. R. Civ. P. 56 (f) stating that further discovery is necessary to determine whether these are disputed material issues of fact. Their argument is that discovery is necessary to clarify the role that Officer Apgar played in the search of the car before the Motion for Summary Judgment can be decided.

Fed. R. Civ. P. 56 (f) states that when the affidavits necessary for the nonmoving party to defeat a motion for summary judgement are unavailable, that the party opposing the motion may submit an affidavit stating the reasons for the unavailability. The courts have emphasized that a party may not invoke Rule 56 (f) by merely stating that discovery is incomplete or that specific facts are unavailable at this time. *Ben Ezra, Weinstein, and Co., Inc. v. AOL*, 206 F. 3d 980, 987 (10th Cir. 2000). The party must show precisely how the discovery requested will lead to a genuine issue of material fact. *Id.*, at 987.

In the context of a summary judgment motion in which the defendant has asserted the affirmative defense of qualified immunity, the courts have held that Rule 56 (f) discretion is further restricted. *Jones v. City and County of Denver*, 854 F. 2d 1206, 1211 (10th Cir. 1988). Lawsuits against government officials asserting qualified immunity should be resolved, when possible, prior to discovery. *Id.*, at 1211. The Rule 56 (f) affidavits should point with particularity to the discovery necessary to defeat the motion for summary judgment and the affirmative defense of qualified immunity.

The Plaintiffs' Amended Complaint alleges that at most Officer Apgar played a peripheral role in the decision to search the car and the actual search of the car. [Amended

Complaint, ¶¶29-64]. He was present during the search of the car but did not perform the actual search. He merely asked Joshua if he had a "problem" with a further search of the car after the school security guard Hyatt removed the knife from the car. Hyatt was the one who continued the search of the car. It was only after Hyatt removed a loaded handgun from the car that Officer Apgar took any action according to the Amended Complaint, placing Joshua under arrest.

The issue of who "instigated" the search or whether the search was "conducted in conjunction with or at the behest of law enforcement agencies" arises because of a footnote contained in the Supreme Court's decision of *New Jersey v. T.L.O. supra.* The Court determined that to begin a search of a student or his property on school grounds, a school official need only have a reasonable suspicion that the search will turn up evidence that the student is violating the law or school regulations. The Court mentioned however, in a footnote, that the holding did not necessarily apply in cases where school officials conduct a search of a student or his belongings at the behest of or in conjunction with law enforcement officials. *Id., supra*, fn. 7.

The Plaintiffs are now arguing that perhaps some discovery will place Officer Apgar at a more pivotal point in the search, thus requiring a different analysis of the justification for the search. This argument is not supported by the Plaintiffs' own pleadings. Neither the Amended Complaint, the Answers to the Amended Complaint, the List of Undisputed Material Facts nor the previous motions filed in this case suggest that Officer Apgar played anything but a peripheral bystander role during the search. To argue that there may now be another scenario which would require a different analysis of the lawfulness of the search is inconsistent as well as speculative. I further find it significant that the Plaintiffs failed to submit an affidavit from Joshua Butler who would have had first hand knowledge of at least some of the role that Officer

Apgar played during the search of the car.

I decline to allow discovery on the role that Officer Apgar played in the search of the car before ruling on this Motion for Summary Judgment on the grounds that such discovery is unduly burdensome to the Defendants and extremely unlikely to produce any evidence to support the speculation that Officer Apgar may have instigated the search of the car. I have already determined that the search was begun and conducted by Hyatt and that the scope of the search was lawful. [Memorandum Opinion and Order dated May 17, 2002, Doc. No. 88].

The sole issue concerning Officer Apgar is whether he had probable case to arrest Joshua Butler when the school security guard found the knife and the loaded handgun. I find that Officer Apgar had probable cause to arrest Joshua Butler and did not violate his Fourth Amendment rights. Upon the finding of the knife and the gun, Officer Apgar had information sufficient to warrant his belief that Joshua Butler had committed the crime of "Unlawful carrying of a deadly weapon on school premises", NM Stat. Ann. §30-7-2.1 (1994 Repl. Pamp.). *See Beck v. Ohio*, 379 U.S. 89, 91 (1964). School premises by definition include the parking lots. §30-7-2.1 (B)(1). "Carrying a deadly weapon" is defined by statute as "having it [a deadly weapon] on the person, or in close proximity thereto, so that the weapon is readily accessible for use." N.M. Stat. Ann. §30-7-1 (1994). *See, e.g., State v. Salazar*, 940 P.2d 195 (Ct. App. 1997). The fact that both weapons were in close proximity to the driver's seat of the car and that Joshua Butler had ready access to the car during the school day were facts which were sufficient to warrant Officer Apgar's belief that Joshua Butler had committed the crime of "Unlawful carrying of a deadly weapon on school premises".

While Joshua may have protested his innocence, law enforcement officers are not

required to believe the arrested's protestations of innocence and forego an arrest. *Romero v. Fay*, 45 F. 3d 1472, 1478, fn. 3 (10th Cir. 1995). Probable cause to arrest a person without a warrant depends on the facts and circumstances within the officer's knowledge at that moment. *Beck v. Ohio, supra*. It is clear from the allegations of the Amended Complaint and the Undisputed Material Facts, that Officer Apgar had sufficient knowledge at that moment lawfully to arrest Joshua Butler on the charge of carrying a deadly weapon on school premises. Since Officer Apgar had probably cause to arrest Joshua Butler without a warrant, the Defendant Apgar did not violate Joshua's Fourth Amendment constitutional rights. Having found no violation of a constitutional right, there is no need to analyze Officer Apgar's actions in the context of the affirmative defense of qualified immunity. The Motion for Summary Judgment is granted as to Defendant Officer Apgar on Count XIII.

## COUNT XV

Count XV of the Amended Complaint alleges that all named Defendants conspired to deprive Joshua Butler of his constitutionally protected rights to his state created property right to a free public education, conspired to deprive Joshua of his liberty interest in his good name, conspired to deprive Joshua to the equal protection of the laws without procedural and substantive due process and conspired to retaliate against him for the exercise of his rights. Furthermore, the Amended Complaint states that the Defendants' actions were motivated by racial animus.

To state a cause of action for conspiracy to deprive one of constitutionally protected rights, one must allege specific facts showing agreement and concerted action among the

defendants. *Durre v. Dempsey*, 869 F. 2d 543, 545 (10th Cir. 1989). The Amended Complaint does not contain such specific facts; it contains conclusions about a conspiracy but does not contain the requisite specificity to state a claim for conspiracy. Furthermore, there is not a single allegation contained in the Amended Complaint which leads to the slightest inference that any of the actions taken by the Defendants the City of Rio Rancho or Officer Russ Apgar in regard to Joshua Butler were motivated by race or other class based animus. Therefore, I find that the Motion for Summary Judgment on Count XV is granted as to Defendants City of Rio Rancho and Officer Apgar.

## PUNITIVE DAMAGES AGAINST THE CITY OF RIO RANCHO AND OFFICER APGAR

Count XVIII alleges that the Defendants acted toward Plaintiffs with reckless indifference and that their actions, which violated the constitutionally protected rights of Joshua, were malicious and intentional. I have found that the Defendants the City of Rio Rancho and Officer Russ Apgar did not violate Joshua's constitutionally protected rights. Therefore the conclusory allegation that these Defendants acted maliciously, recklessly, with intentional evil, or with callous indifference to Joshua's constitutionally protected rights is without basis. *See Smith v. Wade*, 461 U.S. 30, 56 (1983). I find that Count XVIII fails to state a cause of action upon which relief can be granted as to these Defendants the City of Rio Rancho and Officer Apgar. Count XVIII is dismissed.

## VIOLATIONS OF THE NEW MEXICO TORT CLAIMS ACT BY CITY OF RIO RANCHO

Count XVI of the Amended Complaint states a cause of action pursuant to the New

Mexico Tort Claims Act, N. M. Stat. Ann. §41-4-1 et seq. (1996) against the City of Rio Rancho for the alleged torts of its employee Officer Russ Apgar. The Amended Complaint alleges that Officer Apgar committed the torts of false arrest, false imprisonment and malicious abuse of process. The torts of false arrest and false imprisonment are similar. False arrest involves the unlawful arrest of a person while false imprisonment involves the unlawful interference with the personal liberty or freedom of locomotion of another. *See Diaz v. Lockheed Electronics*, 618 P. 2d 372, 374 (Ct. App. 1980). It is undisputed that Officer Apgar arrested Joshua and interfered with his personal liberty. However, I have determined that Officer Apgar had the necessary probable cause to arrest Joshua Butler upon the discovery of the knife and handgun in the car which Joshua had driven to the high school campus. Therefore, the arrest and imprisonment were lawful; Officer Apgar did not commit either the tort of false arrest or false imprisonment.

The tort of malicious abuse of process requires a showing that the defendant 1) has initiated judicial proceedings against the plaintiff, 2) committed an act in the use of process other than that as would be proper in the regular prosecution of the claim, 3) have a primary motive in misusing the legal process against the plaintiff to accomplish an illegitimate or unlawful end, and 4) that the plaintiff has suffered damages. *See DeVaney v. Thriftway Marketing Corp.*, 953 P. 2d 277 (N.M. 1997). I have already determined that Officer Apgar had the necessary probable cause to arrest Joshua Butler without a warrant and therefore acted lawfully in his interactions with Joshua. I find that the plaintiff is unable to show an improper or unlawful act on the part of Officer Apgar or show a malicious motive in Officer Apgar's actions in arresting and charging Joshua with the crime of "Unlawful carrying of a deadly weapon on school premises", NM Stat. Ann. §30-7-2.1 (1994 Repl. Pamp.)

Defendants have met their burden showing an absence of evidence to support the allegations of false arrest, false imprisonment or malicious abuse of process. The Plaintiffs have not been able to carry their burden of pointing to material facts which show there is any material issue for trial. Therefore, Summary Judgment is granted to the Defendant City of Rio Rancho on all claims that arise under the New Mexico Tort Claims Act in Count XVI.

## CONCLUSION

Summary Judgment is GRANTED to the Defendants the City of Rio Rancho and Officer Russ Apgar on all claims contained in Counts XIII, XV, and XVI. Count XVIII is dismissed for failure to state a claim upon which relief can be granted. Having granted Summary Judgment on all claims against the City of Rio Rancho and Officer Russ Apgar in this case or dismissed the claims brought against these Defendants, the Defendants the City of Rio Rancho and Officer Russ Apgar are hereby DISMISSED from this lawsuit.

_____
SENIOR UNITED STATES JUDGE